```
             UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                      AT CHARLESTON
```

**KATELYN GRACE SLEBODA,**

       Plaintiff,

v.                                      Civil Action No. 2:13-30805

**GEORGE MICHAEL PUSKAS, II,**
individually and in his capacity
as a police officer for the
Town of Ripley, West Virginia,
**RAYMOND ANDREW WILLIAMS,** in his capacity
as a police officer for the
Town of Ripley, West Virginia,
**THE TOWN OF RIPLEY POLICE DEPARTMENT** and
**RIPLEY YOUTH SOCCER CLUB**
(a Soccer Association) and
**SHERRI STAHLMAN,** in her capacity as
Registrar and District Representative, and
**CLYDE KENNY,** in his capacity as
a Police Officer of and for
The Town of Ripley Police Department

       Defendants.


## MEMORANDUM OPINION AND ORDER

       Pending are plaintiff Katelyn Grace Sleboda's motion to amend the complaint and to add Officer Raymond Andrew Williams as a party defendant, filed April 24, 2014, and defendants Town of Ripley and Clyde Kenny's motion to dismiss,

filed February 12, 2014, which ripened with Ms. Sleboda's response thereto on April 24, 2014, as permitted by the court.[1]

The court ORDERS that the motion to amend and to add Officer Williams be, and hereby is, granted, with the style to be amended as reflected above. It is further ORDERED that the proposed second amended complaint be, and hereby is, filed today. The factual discussion that follows is taken from the second amended complaint. Ms. Sleboda's allegations must be treated as entirely accurate at this stage of the case, in accordance with the well-settled precedent attached to Rule 12(b)(6).

At the outset, the court notes that "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995). When capacity is not pled specifically, the court is obliged to "examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Id. at 61.

---

[1] The Town of Ripley Police Department named in the style is not an entity subject to suit. The Clerk is directed to amend the style to reflect the proper party defendant, namely, the Town of Ripley.

Having analyzed the operative pleading, the court concludes that Ms. Sleboda has pled both official and individual capacity actions against the named officers. While the style of the action indicates official capacity claims are at issue, the request for punitive damages suggests a judgment is sought as well against the officers personally. The analysis will proceed on that basis.

I.

Ms. Sleboda is a West Virginia resident living in Jackson County. Defendant George Michael Puskas, II, formerly employed as a law enforcement officer for the Town of Ripley, is presently incarcerated at the Federal Correction Institution in Yazoo City, Massachusetts.[2] Officer Williams is a West Virginia resident living in Jackson County. He is a law enforcement officer with the Town of Ripley. Defendant Ripley Youth Soccer Club (the "Club") is an unincorporated association and a member of The West Virginia Soccer Association. Defendant Sheri Stahlman served at relevant times as the Club Registrar and

---

[2] Mr. Puskas is serving a one year and a day sentence of incarceration following his guilty plea and conviction for possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and 2252A(b)(2). The offense conduct involved pornographic images taken of Ms. Sleboda by Mr. Puskas.

District Representative.  She is a West Virginia resident living in Jackson County.  Mr. Puskas also served as a volunteer for the Club.  Defendant Clyde Kenny resides in West Virginia as well, living in Jackson County and serving as a law enforcement officer for the Town of Ripley.

Ms. Sleboda was born in April 1993.  Mr. Puskas is approximately 11 years her senior.  At age 8, Ms. Sleboda began playing soccer in a youth league in Jackson County.  It was during this time that she became acquainted with Mr. Puskas, who served as a Club coach.  Mr. Puskas groomed Ms. Sleboda over a period of years when, after she reached age 12, he carried her to a concession area following an injury she sustained in play and placed her on the ground.  He told her that he loved her and kissed her on the lips.

Following that incident, Mr. Puskas began aggressively texting and calling Ms. Sleboda, purchased her various items, including a Trac Phone to facilitate clandestine discussions with her, and continued generally his grooming efforts.  Ms. Sleboda alleges that this pattern of conduct was known or should have been known by the Club.

Following her 14th birthday in 2007, Mr. Puskas discussed the subject of intercourse with Ms. Sleboda.  His

contact with her at this time included transmitting nude pictures of himself to her via electronic means and requesting that she reciprocate. She reluctantly did so. He frequently cautioned her not to disclose their contacts or they would both be in trouble.

After June 2008, Mr. Puskas worked as a police officer with The Town of Ripley. When Ms. Sleboda was approximately 15 years old, Mr. Puskas began taking nude pictures of her with his Department-issued camera. He then loaded the images onto his Department-issued computer. He increased the time spent with her as well, even visiting her in his police cruiser during the early morning hours and asking her to meet him outside.

Prior to turning 16, Ms. Sleboda was told by Mr. Puskas that they would engage in intercourse when she reached that age. Soon after she met that benchmark, he rented a hotel room in Ripley and had intercourse with her. He continued to victimize her with picture taking, moviemaking, and sexual intercourse at a variety of locations over the next two years. During these events, he used his police cruiser and Department-issued camera and computer. He also at times handcuffed her to the steering wheel during intercourse.

Mr. Puskas' victimization of Ms. Sleboda progressed to the point that he became more physically abusive of her during their sexual encounters. He forced sexual acts on her numerous times, often threatening her with physical harm or death while displaying his gun and Taser™. He said he would do likewise if he ever learned that she was involved sexually with another man.

During the period when Ms. Sleboda was in high school, Mr. Puskas would drive his personal vehicle to the school and take her with him to have sex before 8:00 a.m. He required her to stay with him all day. Her attendance and grades suffered as a result. On one occasion, after she reached her 16th or 17th birthday, he told her he would not be coming to the school anymore. He advised that the Chief of Police had questioned him, stating that he knew about the school visits, that Mr. Puskas was picking someone up there, and that he must cease or face termination of his employment.

Following that incident, Mr. Puskas required Ms. Sleboda to meet him at remote locations during the day for purposes of sexual intercourse or picture taking. When Ms. Sleboda attempted to terminate the encounters, Mr. Puskas verbally abused and intimidated her, threatening to kill or harm her or kill himself.

6

When she was between 16 and 18 years old, Mr. Puskas also required Ms. Sleboda to meet him numerous times while he was on duty after school and during the evening hours.  The encounters were sexual in nature and involved, at times, both picture taking and moviemaking.  On many of these occasions Mr. Puskas' supervisor, Officer Williams, was present for at least some part of the meeting.  Ms. Sleboda knew that Officer Williams was aware of both the sexual acts and the picture taking.

Following her 18th birthday, Ms. Sleboda left West Virginia in an attempt to sever all ties to Mr. Puskas.  She moved to a suburb of Roanoke, Virginia.  She took this step after Mr. Puskas intimidated and harassed her during work hours at a local Kroger in Ripley.  The store manager asked him to leave on one occasion.  Prior to departing West Virginia, her then-boyfriend reported Mr. Puskas' stalking and harassing behavior to Officer Williams.  No follow-up by law enforcement occurred.

During one of two meetings between Officer Williams and the boyfriend, the boyfriend was required to sign a statement identifying harassing text messages.  It was also during one of these two meetings that Officer Williams admitted that Mr. Puskas and Ms. Sleboda had an ongoing sexual

7

relationship lasting approximately four years.  Officer Williams additionally stated that Ms. Sleboda "was no good for" Mr. Puskas and "that he should leave her alone."  (Sec. Am. Compl. ¶ 29).  He also told the boyfriend that both Ms. Sleboda and Mr. Puskas "were getting something out of the relationship and that he should back out of it."  (Id.).  Officer Williams also admitted to Ms. Sleboda's boyfriend that he had seen pictures of Ms. Sleboda, which the boyfriend concluded in context were sexually suggestive or nude while she was a minor.

Officer Williams had an interaction with Ms. Sleboda at approximately Thanksgiving time in 2011.  As paraphrased by Ms. Sleboda, Officer Williams stated, "A pretty girl like you should never get a ticket in Ripley. . . ," which was "communicated in a very sexually suggestive manner, predisposing prior knowledge of the sexual exploitation of her by . . . [Mr.] Puskas."  (Id. ¶ 36).

Upon her arrival in Virginia in October 2011, Mr. Puskas tracked her down.  He traveled there and demanded to see her.  He threatened to kill her and the boyfriend and continued to pressure her for sexual favors and photographs.  Following the visit, the boyfriend phoned the Town of Ripley Police Department again and sought protection.

8

Mr. Puskas continued throughout to threaten or intimidate her via electronic means if she disclosed his activities with her over the years.  On one occasion during the Christmas season in 2011, when she was visiting her family, he sent text messages during the early morning hours wanting to meet with her.  He became enraged when she refused and told or texted her that he knew where she was and that he would come get her if she did not meet with him.  He advised that she could never hide from him.  As a result, Ms. Sleboda and her boyfriend immediately left West Virginia and fled again to Virginia.

In January 2013, after Ms. Sleboda had apparently returned to Ripley and began working at City National Bank, defendant Sherri Stahlman on at least two occasions visited the Bank.  She began cursing at Ms. Sleboda and calling her obscene names that related to the events with Mr. Puskas.

The situation with Ms. Stahlman culminated in Ms. Sleboda contacting the United States Attorney's Office.  That Office reached out to the West Virginia State Police, which then undertook efforts to halt Ms. Stahlman's harassment.  On May 22, 2013, City National Bank closed Ms. Stahlman's accounts.

On December 3, 2013, Ms. Sleboda instituted this action.  On December 9, 2013, the defendant Town of Ripley

9

Police Department was served with the complaint. Later that same week, and continuing through the afternoon of December 19, 2013, defendant Officer Clyde Kenny engaged in a pattern of harassment directed at Ms. Sleboda. On at least three separate occasions while she was at a stop light he followed her, winked at her, and waved her over to his cruiser.

## II.

Count One of the second amended complaint alleges a supervisory liability claim under 42 U.S.C. § 1983 against Officer Williams.[3] Count Two alleges unspecified intentional tort and negligence claims against Mr. Puskas arising out of his sexual and physical abuse of Ms. Sleboda. Count Three rests on an unspecified legal theory arising out of Mr. Puskas' intimidation, harassment, control, and abuse of Ms. Sleboda.

Count Four asserts a <u>respondeat superior</u> claim against Officer Williams arising out of Mr. Puskas' misconduct. Count Five alleges a Section 1983 conspiracy between Officer Williams and Mr. Puskas and includes additional language suggesting an

---

[3] As noted, the claims alleged against Officer Williams arise in both his individual and official capacities. While Officer Williams has not been served, and has not moved to dismiss, the official capacity claims against him would be, in effect, claims against the Town of Ripley, which has so moved.

intention to hold Officer Williams liable for negligence. Count Six alleges a direct negligence claim, and one for <u>respondeat superior</u> liability, against the Club arising out of Mr. Puskas' misconduct at a time when he served as a coach and referee. Count Seven is a single, substantive paragraph mentioning Officer Kenny, but drawn such that the court cannot divine the claim alleged.

As stated, the Town of Ripley and Officer Kenny move to dismiss.[4] First, the Town of Ripley contends that Count One neither contains a sufficient factual predicate nor identifies a constitutional injury. Second, it asserts immunity from liability respecting Counts Four and Five pursuant to the Governmental Tort Claims and Insurance Reform Act, West Virginia Code §§ 29-12A-1, <u>et seq</u>. Third, Officer Kenny contends that Count Seven does not give rise to a claim for relief or state a constitutional injury.

---

[4] The motion to dismiss was originally directed toward the first amended complaint. Inasmuch as the court has now authorized the filing of a second amended complaint, the motion to dismiss will be addressed as it relates to that superseding, operative pleading.
  As noted, the individual capacity claims alleged against Officer Williams implicate the Town of Ripley as well, to the extent they are also pled against him in his official capacity. Counts One, Four and Five have been dually pled in this fashion, and so are considered for dismissal purposes under the Town of Ripley's arguments mentioned above relating to Counts One, Four and Five respectively.

Ms. Sleboda does not mention the Act. Based upon Counts Four and Five of the first amended complaint, however, the Town of Ripley attributes to Ms. Sleboda an intention to allege a respondeat superior claim against it based solely upon the intentional actions of Mr. Puskas alone. This reading of the complaint may immunize the Town of Ripley, based upon this excerpt from Mallamo v. Town of Rivesville, 197 W. Va 616, 477 S.E.2d 525 (1996), which notes the Act

> provides that political subdivisions are liable for injury or loss to persons "caused by the negligent performance of acts by their employees while acting within the scope of employment." (emphasis added). In that conspiracy is an intentional act, not a negligent one, the Town of Rivesville would not be liable for any intentional malfeasance on the part of Wilson.

Id. at 624, 477 S.E.2d at 533 (emphasis in original).

The Town of Ripley's reading of the first amended complaint, however, is an unduly narrow one respecting the tortfeasor's identity. (See First Am. Compl. ¶ 63 (noting in Count Four the Town of Ripley is "vicariously responsible for the conduct of both Puskas and its Supervisor(s), all of which said conduct proximately caused all manner of injuries . . . .") (emphasis added); id. ¶ 66 (noting in addition to Mr. Puskas' intentional misconduct that liability under Count Five is based upon "supervisory personnel inaction" in the face of the damage caused to Ms. Sleboda).

12

Further, the supervisory allegations found in Counts Four and Five of the second amended complaint are even more precise than those in the predecessor pleading, naming Officer Williams specifically and providing additional allegations suggesting his liability in negligence rather than just the intentional acts of Mr. Puskas. (See Sec. Am. Compl. ¶¶ 62, 65 (respectively alleging Officer Williams' "gross negligence" and his failure to conduct "a reasonable investigation" of Mr. Puskas' activities). Inasmuch as the Town of Ripley's argument unduly telescopes the allegations of the first amended complaint, and disregards the revised allegations of the second amended complaint, dismissal of Counts Four and Five is inappropriate.

A discussion of the remaining two arguments for dismissal follows.

## III.

A.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P.

8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563); see also Anderson v. Sara Lee Corp., 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)).

14

The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

B.  Analysis

Respecting the Count One supervisory liability claim, our court of appeals has established the following three elements of proof:

> (1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and
>
> (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

<u>Wilkins v. Montgomery</u>, No. 13-1579, --- F.3d ----, ----, 2014 WL 1759083 (4th Cir. May 5, 2014) (internal quotation marks omitted) (quoting <u>Shaw v. Stroud</u>, 13 F.3d 791, 799 (4th Cir. 1994)).

In <u>Wilkins</u>, the court of appeals elaborated upon each of the foregoing proof requirements:

> As to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."  As to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses."  Finally, as to the third element, "proof of causation may be direct ... where the policy commands the injury of which the plaintiff complains ... or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions."

Wilkins, No. 13–1579, --- F.3d at ----, 2014 WL 1759083.

The second amended complaint alleges that Officer Williams knew that Mr. Puskas had been illegally exploiting a minor sexually, along with engaging in stalking and harassing behavior toward her.  It is further alleged that, despite that knowledge, Officer Williams' response was so inadequate as to demonstrate deliberate indifference or tacit authorization.  Officer Williams' inaction is further said to have caused the constitutional injury, namely, continuing physical, mental and emotional injuries, and economic harm.

The factual allegations supporting these elements include reference to Officer Williams being present, during some portion of the meetings, when Ms. Sleboda, between 16 and 18 years-old, was required by Mr. Puskas to engage in sexual activities involving both picture taking and moviemaking.  She

16

further alleges that Officer Williams was aware of the sexual acts and the picture taking.  Although other factual allegations support the supervisory liability claim, these isolated references are sufficient for Count One to withstand a Rule 12(b)(6) motion.

Respecting the allegations of Count Seven, as noted, the single substantive paragraph mentioning Officer Kenny is simply too opaque to assess.  In its present form, that portion of the second amended complaint found under Count Seven is deemed not well pled and insufficient to state a claim.  It is, accordingly, ORDERED that the motion to dismiss as to Count Seven be, and hereby is, granted conditionally.  Ms. Sleboda may, no later than June 23, 2014, attempt to amend the operative pleading to allege further facts that would state a plausible state or federal claim against Officer Kenny.  In the absence of such an amendment, the motion to dismiss as to Count Seven will be formally granted.

IV.

Based upon the foregoing discussion, it is ORDERED as follows:

1. That the motion to amend and to add Officer Williams be, and hereby is, granted, with the style to be amended as reflected above;

2. That the proposed second amended complaint be, and hereby is, filed today;

3. That the motion to dismiss be, and hereby is, granted granted conditionally as to Count Seven under the terms more fully set forth supra, and denied in all other respects;

4. That the stay earlier entered, be, and hereby is, continued in effect, with the exception of effectuating the relief granted herein and with leave to Ms. Sleboda to serve the second amended complaint and the defendants permitted to respond thereto in accordance with the Federal Rules of Civil Procedure.

**The Clerk is directed to transmit a copy of this written opinion and order to all counsel of record and any unrepresented parties.**

                                        **ENTER:  June 11, 2014**

                                        **John T. Copenhaver, Jr.**
                                        **United States District Judge**